Claire A. Pekras v. Commissioner. John Pekras v. Commissioner.
Pekras v. Commissioner
Docket Nos. 112359, 112360.
United States Tax Court
1943 Tax Ct. Memo LEXIS 277; 2 T.C.M. (CCH) 195; T.C.M. (RIA) 43258; May 31, 1943
*277 R. H. Rico, Esq., 814 Elyria Savings Bank, Elyria, O., for the petitioners. W. W. Kerr, Esq., for the respondent. STERNHAGEN Memorandum Opinion STERNHAGEN, Judge: The Commissioner determined a deficiency of $3,469.32 in Claire A. Pekras' 1940 income tax and a deficiency of $4,158.06 in John Pekras' 1940 income tax. He determined that leaseholds were not capital assets within the meaning of Section 117(a)(1), Internal Revenue Code, and that the gains realized on their sale were not subject to percentage limitations. The facts are all stipulated. [The Fact] The petitioners are husband and wife, residing in Elyria, Ohio. They filed separate returns for 1940 in the 18th District of Ohio. In April, 1940, they were engaged in operating four motion picture theatres in Elyria, Ohio, which were known as the Capitol, the New Rivoli, the Lincoln, and the Rialto. The last named is not involved in these proceedings. Capitol Theatre. The land is owned by William A. Ely, who, on October 4, 1920, leased it to Samuel G. Sadaris for a term expiring September 30, 1945, the lessee to erect a theatre thereon, which on expiration of the lease should revert to the lessor. November 26, 1929, *278 the term was extended to September 30, 1955. Prior to November 26, 1930, John Pekras acquired an interest in the lease from Sadaris. On that date they, and a theatre operating corporation owned by them, sold their interests in the lease, theatre building and equipment, to Warner Bros. Pictures, Inc.Warner Bros. Pictures, Inc., by contract dated November 23, 1934, sold to Claire Pekras said interests which included all rights under the original lease and extension thereof, and "All the personal property, furniture and equipment located in said Capitol Theatre". As part of the consideration of the November 23, 1934, contract, Claire Pekras cancelled the balance $22,565.16 of unpaid rent on the lease due from Warner Bros. Pictures, Inc. She assumed and paid the balance $11,934.72 of unpaid rent due from Warner Bros. Pictures, Inc. to Samuel G. Sadaris. She also paid Warner Bros. $25,000 in weekly installments of $100. The total amount cancelled or paid by her was $59,499.88. No allocation of the consideration was made in the contract of November 23, 1934, of any particular item or of the leasehold as an item separate from the building improvements erected by lessees. While the sale *279 of November 23, 1934, was being negotiated, Claire Pekras, on August 30, 1934, obtained from Ely an additional extension of the term of the lease to September 30, 1959. Claire Pekras paid $1,500 attorneys' fees for services in connection with negotiations with Ely for extension of the lease and in other legal matters connected with the theatre. She allotted $1,400 of this fee to services in connection with the lease. This $1,400 was deducted by her and allowed by respondent as an ordinary and necessary business expense in 1934. It was again set up in her return for 1940 as cost of the leasehold. In December, 1934, and during 1935, Claire Pekras paid $51,660.25 of the total consideration recited in the Warner Bros. contract. In 1936, she paid the balance of $7,839.63. In 1936, she made building improvements costing $6,701 and installed new equipment costing $14,393.93. In 1939, she added some equipment. As of May 1, 1940, her records showed: Property and
Date Acquired
Original
Amortization
Unamortized
(Buildings)
Cost
Taken
Cost
1935
$43,091.92
$ 8,678.18
$34,413.74
1936
6,701.00
1,116.84
5,584.16
(Equipment)
1935
8,568.33
2,639.04
5,929.29
1936
22,233.56
6,800.43
15,433.13
1939
285.18
10.97
274.21
(Leasehold)
1934
None
None
None
$80,879.99
$19,245.46
$61,634.53
*280 Depreciation was deducted as to buildings on the basis of the term of the lease and as to equipment on the basis of the anticipated useful life. New Rivoli Theatre. November 12, 1913, the land was leased by the owner to Dachtler & Dachtler for the term expiring November 14, 1933, extended on August 28, 1915, to January 1, 1941. September 11, 1915, Dachtler & Dachtler sublet to Owen J. Bannon for the term expiring January 1, 1941, subleases to erect a theatre on the premises. The theatre was built in 1922-1923. September 26, 1922, Bannon assigned his interest in the lease to The Bannon Theatre Co. The lease provided that building improvements would revert to the owner of the fee on expiration of the term January 1, 1941. The term was never extended. John and Claire Pekras owned the majority of the shares of Bannon Theatre Co. May 4, 1937, the fee owners leased the premises to John Pekras, for a term January 1, 1941-December 31, 1965. He paid $4,500 to acquire outstanding adverse interests. In April, 1940, the Bannon Theatre Co. was the owner of the lease, owned the theatre building subject to the rights of the fee owners, and owned full title to the theatre equipment. The *281 $4,500 was capitalized by John Pekras but no amortization thereon was claimed in his 1937, 1938, or 1939 returns. Lincoln Theatre. October 11, 1922, John Pekras became the lessee of part of a three story building for a term ending August 31, 1937. August 5, 1932, a new lease was made for a term expiring December 31, 1958, later changed to December 31, 1957. No consideration was paid for this lease beyond annual rental. In April, 1940, John Pekras owned the lease expiring December 31, 1957; all furnishings and equipment in the theatre, and the right to use building alterations and improvements made by him for the term of said lease. His unamortized cost of the equipment was $18,643.87. As of May 1, 1940, the petitioners and The Bannon Theatre Co. sold their respective interests in the three theatres to Amster, giving separate leases for the term May 1, 1940, to the expiration date of the respective underlying leases, and separate bills of sale of the equipment in each theatre. The sale price as to the Capitol Theatre was allocated in the agreement to $105,000 for the lease and $75,000 for the equipment and building rights. Claire Pekras received $26,850 in 1940, of which $23,807.08 *282 was profit. The entire sale price of $49,000 stated for the New Rivoli Theatre was for the lease alone; of this $49,000 John Pekras received $12,525 in 1940, of which $10,112.10 was profit. The sale price of the Lincoln Theatre was allocated $60,000 for the lease and $20,000 for the equipment and building rights; of this $60,000 John Pekras received $15,339 in 1940, of which $13,794.56 was profit. [Opinion] The only issue arises from the statement in the notices of deficiency: Since a lease is not a capital asset within the meaning of Section 117 (a) (1) of the Internal Revenue Code, the full amount of the gain realized consitutes taxable income. The taxpayers contend that this determination is erroneous. Section 117, which imposes the tax upon capital gains and in (a)(1) defines capital assets for the purpose of the statute, expressly excludes from definition "property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(1)." As to the buildings and equipment, it is not disputed that they were subject to depreciation and therefore not capital assets. It is only necessary to determine whether the exclusionary *283 language covers the leaseholds. The exclusionary language of the section deals with property of a character which is depreciable and not with property which for some local or particular reason has been the subject of allowances for depreciation. If the character of the property sold is such that it is properly subject to an allowance under Section 23(1), that is, if in character it is susceptible to exhaustion, wear and tear, including obsolescence, it is excluded from the definition of capital asset. The leaseholds that petitioners sold were acquired by purchase during their fixed terms. They were depreciable over the term upon their proper basis. The fact that the taxpayer did not treat any part of the total amount paid for the leasehold and equipment as cost of the leasehold and did not during his ownership deduct depreciation does not operate to characterize the leasehold as not, in character, subject to depreciation. Generally speaking, a leasehold is property of such character ( Fackler v. Commissioner, 133 Fed. (2d) 509, and it must be held upon the evidence that there was no error in the determination that the gain from the sale of the leaseholds *284 was not a capital gain. There is no dispute as to the amount of the gain. The petitioners included 50 per cent thereof as taxable under Section 117 and the respondent determined the deficiencies by adding the other 50 per cent. He taxed the entire gain as ordinary gain. This determination was correct. Decision will be entered for the respondent.